**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| WHIRLPOOL PROPERTIES, INC., WHIRLPOOL CORPORATION, and MAYTAG PROPERTIES, LLC, <br><br> *Plaintiffs,* <br><br> v. <br><br> VANKIN COMPANY LIMITED, <br><br> *Defendant.* | CIVIL ACTION NO.: 2:23-cv-00070 |

**WHIRLPOOL PLAINTIFFS' MOTION FOR ENTRY OF
DEFAULT JUDGMENT AND PERMANENT INJUNCTION**

Plaintiffs Whirlpool Properties, Inc., Whirlpool Corporation, and Maytag Properties, LLC (collectively referred to as "Whirlpool") respectfully submit this motion for entry of default judgment and permanent injunction against Defendant Vankin Company Limited ("Vankin").

## **INTRODUCTION**

In this motion for default judgment and permanent injunction, Whirlpool asks the Court for assistance with putting a stop to ongoing patent and trademark infringement by a Defendant that has failed to appear or participate in this litigation. Rather than sell its products on online marketplaces like Amazon or eBay, which have reporting mechanisms for intellectual property owners, Defendant uses its own standalone websites to carry out its acts of infringement. Defendant is thereby able to sell its products without fear that it may be shut down by an online marketplace for its illegal activities.

## STATEMENT OF FACTS

### I.    WHIRLPOOL'S PATENTS.

Whirlpool is an industry leader in the design, manufacture, supply, and sale of household appliances and accessories throughout the United States and the rest of the world. (Exhibit 1, Declaration of Timothy C. Schifer ¶ 4). A significant component of Whirlpool's business relates to the design, manufacture, supply, and sale of water filters for use in the refrigerators it sells. (Exhibit 1, Declaration of Timothy C. Schifer ¶¶ 4, 8). Whirlpool enjoys remarkable goodwill and a reputation for providing premium products within the industry and amongst members of the relevant consuming public. (Exhibit 1, Declaration of Timothy C. Schifer ¶ 4).

The present lawsuit involves Vankin's infringement of several patents owned by Whirlpool: United States Patent Nos. 7,000,894 ("the '894 patent"); 8,356,716 ("the '716 patent"); 8,591,736 ("the '736 patent"); 8,845,896 ("the '896 patent"); 9,937,451 ("the '451 patent"); and 10,010,820 ("the '820 patent") (collectively, "the Patents"). Whirlpool's various refrigerator water filters practice the technology claimed and protected by each of the Patents.

### A.    The '894 patent.

The '894 patent issued on February 21, 2006. (Docket No. 1-1 at 2). On March 3, 2014, a Reexamination Certificate was issued confirming all original or amended claims, *see Id.* at 43-44, and the '894 patent subsequently withstood a validity challenge before this Court. *See Whirlpool Corporation v. TST Water, LLC*, Case No. 2:15-CV-1528-JRG. Since the issuance of the Reexamination Certificate, dozens of manufacturers and retailers have entered into consent judgments in this Court, acknowledging their infringement and the validity of the '894 patent. Whirlpool designs and sells two refrigerator water filters that practice the technology protected by the '894 patent. Whirlpool's Ice & Water Refrigerator Filters 1 and 3 (discussed below) practice the claims of the '894 patent. (Exhibit 1, Declaration of Timothy C. Schifer ¶ 5).

**B.  The '716, '736, '896, '451, and '820 patents.**

The '716 and '736 patents issued in 2013.  The '896 patent issued in 2014, and the '451 patent and '820 patent issued in 2018. (Docket No. 1-2 through 1-6). As with the '894 patent, many manufacturers and retailers have entered into consent judgments in this Court, acknowledging their infringement and the validity of several of these patents. (*See* Docket No. 1 at ¶¶ 95, 108, 121, 134, 147). Whirlpool's Ice & Water Refrigerator Filter 2 (discussed below) is covered by these patents. (Exhibit 1, Declaration of Timothy C. Schifer ¶ 6).

## II.    WHIRLPOOL'S TRADEMARKS.

Whirlpool manufactures and sells its filters under several well-known, famous brands, including the Whirlpool®, KitchenAid®, Maytag®, Amana®, and Jenn-Air® brands (collectively "the Marks"). (Docket No. 1 at ¶ 20; Exhibit 1, Declaration of Timothy C. Schifer ¶ 8). The Marks are protected by the following federal registrations:

| MARK | REGISTRATION NO. | RELEVANT GOODS |
|---|---|---|
| **Whirlpool**<br>(design mark) | Reg. No. 5,921,312 | Refrigerators, freezers, and refrigerator water filters |
| WHIRLPOOL (word mark) | Reg. No. 4,983,312 | Water filtration and purification units and replacement cartridges and filters therefor for refrigerators |
| **Whirlpool**<br>(design mark) | Reg. No. 1,251,511 | Refrigerators |
| WHIRLPOOL (word mark) | Reg. No. 1,670,524 | Refrigerators and freezers |

| WHIRLPOOL (word mark) | Reg. No. 937,550 | Refrigerators |
| --- | --- | --- |
| WHIRLPOOL (word mark) | Reg. No. 626,550 | Refrigerators |
| KITCHENAID (word mark) | Reg. No. 6,965,661 | Water filtration and purification units and replacement cartridges and filters therefor |
| KITCHENAID (word mark) | Reg. No. 2,520,284 | Refrigerators; water supply units for dispensing cold water and ice from refrigerators |
| **KitchenAid** (design mark) | Reg. No. 2,520,285 | Refrigerators; water supply units for dispensing cold water and ice from refrigerators |
| KITCHENAID (word mark) | Reg. No. 1,585,507 | Refrigerators |
| MAYTAG (word mark) | Reg. No. 5,370,223 | Refrigerators |
| MAYTAG (word mark) | Reg. No. 2,638,631 | Appliance installation, maintenance, and repair services |
| AMANA (word mark) | Reg. No. 3,059,004 | Refrigerators, freezers and combination refrigerator/freezers |
| AMANA (word mark) | Reg. No. 3,697,563 | Installation, maintenance and repair of refrigerators, freezers and combination refrigerator/freezers |
| JENN-AIR (word mark) | Reg. No. 1,547,093 | Refrigerators and freezers |
| JENN-AIR (word mark) | Reg. No. 3,710,972 | Installation, maintenance and repair of freezers and refrigerators |

Each of the Marks are protected by one or more federal registrations that have achieved

"incontestable" status, which serves as conclusive evidence of Whirlpool's ownership of the Marks

and its exclusive right to use the Marks in connection with the goods listed in the registrations.[1]

*See* 15 U.S.C. §§ 1065, 1115(b).

## III.    WHIRLPOOL'S FILTERS.

Included in Whirlpool's product offerings are its patented Ice & Water Refrigerator Filters 1, 2, and 3 (hereinafter "Filter 1", "Filter 2", and "Filter 3"), as shown below:

**Filter 1**　　　　　**Filter 2**　　　　　**Filter 3**



(Exhibit 1, Declaration of Timothy C. Schifer ¶ 7).

Whirlpool sells each of these filters under the Whirlpool®, KitchenAid®, Maytag®, Amana®, and Jenn-Air® brands, and they are a very important part of Whirlpool's business, both in terms of revenue and in creating and maintaining consumer goodwill for Whirlpool. (Exhibit 1, Declaration of Timothy C. Schifer ¶ 8). Whirlpool has spent considerable resources in acquiring, developing, marketing, and distributing these products and their related technology. (Exhibit 1, Declaration of Timothy C. Schifer ¶¶ 9, 11). A large portion of Whirlpool's marketing efforts for

---

[1]  Registration Nos. 4,983,312; 1,251,511; 1,670,524; 937,550; 626,550; 2,520,284; 2,520,285; 1,585,507; 2,638,631; 3,059,004; 3,697,563; 1,547,093 and 3,710,972 are incontestable. (*See* Docket No. 1 at ¶¶ 24, 27, 30, 33, 36).

these filters is conducted online. (Exhibit 1, Declaration of Timothy C. Schifer ¶ 11).

Whirlpool is known in the industry and by its customers for the quality products that it produces and distributes. Its customers rely on Whirlpool to provide such quality to ensure the proper operation of their refrigerators and the water quality they desire for their families. (Exhibit 1, Declaration of Timothy C. Schifer ¶ 9).Whirlpool invests significant resources in quality control testing and third-party certification to ensure that its water filters are of high quality. (Exhibit 1, Declaration of Timothy C. Schifer ¶ 9).

Whirlpool began to experience a significant decline in its unit sales of Filters 1, 2, and 3 in 2015 due to infringing copycat filters being manufactured and widely sold on internet retail sites such as Amazon.com and eBay.com.   (Exhibit 1, Declaration of Timothy C. Schifer ¶ 10). Whirlpool filed its first patent infringement lawsuit against one of these retailers in October 2015, and since that time has filed suit against dozens of infringing manufacturers and retailers. (Exhibit 1, Declaration of Timothy C. Schifer ¶ 10). Now – despite these efforts – new infringing actors such as Vankin use websites such as www.filterswell.com, www.bluaquafilters.com, and www.bonanza.com to flood the U.S. market with their infringing, copycat products.

## IV.    VANKIN'S UNLAWFUL ACTIVITIES AND ITS REFUSAL TO PARTICIPATE IN THIS LITIGATION.

### A.    The Accused Products and Vankin's infringement of the Patents.

Vankin offers for sale and sells infringing copies of Whirlpool's Filter 1, Filter 2, and Filter 3. Shown below are annotated images of Vankin's "Bluaqua"-branded Filter 1 copy and Whirlpool's patented Filter 1, which are virtually identical:



The same is true of Vankin's Filter 2 and Filter 3 products—they are copies of Whirlpool's patented filters. Vankin's Filter 1, Filter 2, and Filter 3 copies are collectively referred to herein as the "accused products." As explained in the argument section below, each of the accused products infringes one or more of the Patents.

**B.  Vankin's Violations of Whirlpool's Trademark Rights and Unfair Competition.**

In addition to infringing the Patents, Vankin has also deceptively and misleadingly used Whirlpool's Marks in its efforts to sell the accused products. For example, the following banner advertisement has been featured prominently on the homepage of the www.filterswell.com website:



(Docket No. 1 at ¶ 39). The following water filter listing has also appeared on www.filterswell.com:



(Docket No. 1 at ¶ 41).

Rather than use online marketplaces like Amazon and eBay (which offer enforcement mechanisms for intellectual property owners), Vankin uses its own websites to further its infringement scheme, including www.filterswell.com and www.bluaquafilters.com. (Docket No. 1 at ¶ 43). Vankin also engages in substantially similar activities on www.bonanza.com, where it

offers for sale and sells the accused products under the name "funcoolbox." (Docket No. 1 at ¶ 43).

### C.  Vankin's refusal to participate in this lawsuit.

Whirlpool served Vankin with this lawsuit on March 10, 2023. (Docket No. 11 at 4). Vankin has failed to appear or otherwise respond to the complaint. A Clerk's default was therefore entered against Vankin on April 12, 2023. Docket No. 13.

Vankin's unlawful conduct, however, has continued unabated. Whirlpool respectfully submits that the relief requested in this motion is the only means available for Whirlpool to effectively stop Vankin's ongoing and willful unlawful conduct.

## <u>ARGUMENT</u>

## I.  WHIRLPOOL IS ENTITLED TO A DEFAULT JUDGMENT AGAINST VANKIN.

### A.      All relevant factors support a default judgment.

Upon entry of default by the clerk, the Court has the discretion to enter a default judgment against a defendant. Lindsey, et al. v. Prive Corp., et al., 161 F.3d 886, 893 (5th Cir. 1998). Relevant factors for consideration by the Court include whether material issues of fact are at issue; whether the grounds for default are clearly established; whether default was caused by good faith mistake or excusable neglect; whether there has been substantial prejudice; and the harshness of default judgment. *Id.* Here, consideration of all relevant Lindsey factors warrants the entry of a default judgment against Vankin.

First, there are no material issues of fact that prevent the entry of default judgments. "Once a defendant is in default, the court accepts as true all facts set forth in the complaint aside from those relating to damages." *Eisenhour v. Stafford*, 2013 WL 6212725, No. 9:12-CV-62, at *2 (E.D. Tex. Nov. 26, 2013) (citing Frame v. S-H, Inc., 967 F.2d 194, 205 (5th Cir. 1992)). Thus, by failing to answer the Complaint, Vankin admits the well-pleaded allegations contained therein. *Jones v.*

*Lockhart, Morris & Montgomery*, No. 1:11-CV-373, 2012 WL 1580759, at *3 (E.D. Tex. Feb. 3, 2012) (citing Nishimatsu Const. Co., Ltd. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975)).

This includes, for purposes of the present lawsuit, the admission that Vankin's offer to sell and sale of the filters at issue infringe the Patents. *See, e.g., Jaguar Imports, LLC v. Phoenix Global Ventures, Inc.*, No. 6:12-cv-1486-Orl-31KRS, 2013 WL 3491160, at *3 (M.D. Fla. July 2, 2013) ("By its default, [defendant] admits that it willfully infringed [the patent-in-suit]"). The same is true with respect to Vankin's admission that Whirlpool's Marks are valid and enforceable, (Docket No. 1 at ¶ 73), and that Vankin's unauthorized use of the Marks is likely to cause consumer confusion. (*Id.* at ¶¶ 37-38, 52, 59, 62, 74).

Second, Whirlpool properly served Vankin with copies of the Summons, Complaint, all supporting exhibits, and related documents. (Docket No. 11 at 2). As such, the grounds for default are clearly established. *See* Jones, 2012 WL 1580759 at *3 (evidence of successful perfection of service on defaulting defendant clearly establishes grounds for default). The record is devoid of any good faith mistake or excusable neglect on the part of Vankin.

Third, any claim about the "harshness" of a default judgment under the circumstances is without merit. Vankin had ample time to obtain counsel and answer or otherwise respond to Whirlpool's Complaint, but has chosen not to do so – instead, continuing its infringing conduct with impunity. *See Barnett v. A S & I, LLC*, No. 3:13-cv-2464-BN, 2014 WL 6884010, at *4 (N.D. Tex. Dec. 8, 2014) (no weight given to any harshness of default judgment when defendant had adequate time to respond and failed to do so). The same is true of any substantial prejudice that might result toward Vankin. *See Leger v. Rivers Edge Treestands, Inc.*, No. 1:13-CV-326, 2016 WL 909173, at *3 (E.D. Tex. Feb. 8, 2016 (defendant's dilatoriness and noncompliance weighs

against any finding of substantial prejudice).

All of the relevant *Lindsey* factors favor the entry of a default judgment against Vankin and in favor of Whirlpool.

**B. The Court has jurisdiction over Vankin to enter a default judgment.**

In order for the Court to enter a default judgment, Whirlpool must make a prima facie showing of jurisdiction. *See Sys. Pipe & Supply, Inc. v. M/V Viktor Kurnatovskiy*, 242 F.3d 322, 325 (5th Cir. 2001). That burden in easily met here. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338 over Whirlpool's Lanham Act claims (Counts I through III) and Whirlpool's patent infringement claims (Counts V through X). The Court has subject matter jurisdiction over Whirlpool's claim for common law trademark infringement and unfair competition (Count IV) pursuant to 28 U.S.C. § 1367(a).[2] Further, the Court has personal jurisdiction over Vankin because it has actively engaged in the advertising for sale, sales, and/or distribution of the accused products in Texas, including in this judicial district. (Docket No. 1 at ¶¶ 11-18). *See Jacobs Chuck Mfg. Co. v. Shandong Weida Machinery Co., Ltd.*, No. 2:05-cv-185, 2005 WL 3299718, at *8 (E.D. Tex. Dec. 5, 2005) (court had personal jurisdiction over Chinese defendant in patent infringement case where defendant knew or should have reasonably expected its products would be bought by consumers in the United States and Texas).

**C. There is a sufficient basis in Whirlpool's well-pleaded Complaint for the entry of a default judgment.**

In order to obtain a default judgment, there must also be sufficient basis in the pleadings for the relief requested. *See Wooten v. McDonald Transit Associates, Inc.*, 788 F.3d 490, 496 (5th Cir. 2015). That requirement is plainly met here.

**1.    Patent infringement claims (Counts V – XI).**

---

[2] Count IV arises out the same underlying conduct that gives rise to Whirlpool's claims under the Lanham Act. (Docket No. 1 at ¶¶ 72-78).

The Complaint alleges patent infringement on the part of Vankin as follows:

- Whirlpool is the owner of the Patents, each of which was duly and legally issued by the USPTO (Docket No. 1 at ¶¶ 80-81, 92-93, 105-06, 118-19, 131-32, 144-45);

- Whirlpool designs and sells products that practice the Patents, including Whirlpool EveryDrop Filter 1, Filter 2, and Filter 3 refrigerator filters, and marks such products with the applicable Patents, of which Vankin had actual notice (*Id.* at ¶¶ 82, 87, 94, 99, 107, 111, 120, 124, 133, 138, 146, 150);

- Vankin is an importer, distributor, and seller of water filters for refrigerators (*Id.* at ¶ 9);

- Vankin has infringed and continues to infringe various identified claims of the Patents by, among other things, offering to sell and selling infringing filters, including Bluaqua-branded filters that purport to be compatible with the Whirlpool Filter 1, Filter 2, and Filter 3 (*Id.* at ¶¶ 10, 12);

- Whirlpool has suffered irreparable harm as a result of Vankin's actions (*Id.* at ¶ 45); and

- A request for injunctive relief, attorney fees, and costs.  (*Id.* at pp. 36-39).

The Complaint alleges the specific infringing products offered for sale and sold by Vankin and the specific claims of each of the Patents that have been and are being infringed. These specific allegations provide a sufficient basis for a default judgment on Whirlpool's claims of patent infringement (Counts V–X) under Federal Rule of Civil Procedure 8(a)(2).

Whirlpool is entitled to the entry of a default judgment against Vankin on its claims of patent infringement.

### 2.    Trademark infringement, false designation of origin, and unfair competition claims (Counts I, II, and IV).

Count I of Whirlpool's Complaint is for trademark infringement under the Lanham Act, 15 U.S.C. § 1114. To prevail on this claim, Whirlpool must show: (1) it possesses a legally protectable trademark and (2) Vankin's use of this trademark creates a likelihood of confusion as to source, affiliation, or sponsorship. *See Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.*, 851 F.3d 440,

450 (5th Cir. 2017) (citing *Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 517, 536 (5th Cir. 2015)). The elements for Whirlpool's false designation of origin claim (Count II) and common law trademark infringement claim (Count IV) are the same. *See Philip Morris USA Inc. v. Lee*, 547 F. Supp. 2d 667, 674 (W.D. Tex. 2008) ("The elements of trademark infringement and false designation of origin are identical, and the same elements will establish both claims."); *Streamline Prod.*, 851 F.3d at 450 ("The elements of common law trademark infringement under Texas law are the same as those under the Lanham Act.").

### a. The Marks are valid and protectable.

To be legally protectable, a mark "must be 'distinctive' in one of two ways: (1) inherent distinctiveness or (2) acquired distinctiveness through secondary meaning." *Streamline Prod.*, 851 F.3d at 850 (internal citation and quotation marks omitted). "Registration of a mark with the PTO is prima facie evidence that the mark is inherently distinctive." *Id.*

Here, each of the Marks is protected by a registration with the USPTO. These registrations serve as "prima facie evidence" that the Marks are inherently distinctive. *See Id.* Further, the Whirlpool, Maytag, KitchenAid, Amana and Jenn-Air marks in  Registration Nos. 4,983,312; 1,251,511; 1,670,524; 937,550; 626,550; 2,520,284; 2,520,285; 1,585,507; 2,638,631; 3,059,004; 3,697,563; 1,547,093 and 3,710,972 are incontestable, *see* Docket No. 1 at ¶¶ 24, 27, 30, 33, 36), and therefore serve as conclusive evidence of Whirlpool's ownership of the marks and Whirlpool's exclusive right to use the marks in connection with the goods listed in the registrations. *See* 15 U.S.C. §§ 1065, 1115(b). In addition, the Whirlpool, Maytag, KitchenAid and Amana marks were recently the subject of a federal lawsuit for trademark violations relating to similarly deceptive uses in the context of advertising non-genuine water filters which proceeded to a jury trial in 2019. The trial resulted in a jury verdict in Whirlpool's favor in the amount of $5.8 million, which led to a consent judgment and permanent injunction which prohibits the misuse of the marks. *See*

*Whirlpool Properties, Inc. v. Filters Fast, LLC*, No. 3:17-cv-00601 (W.D.N.C. 2019) (Docket No. 161, 193).

>   **b.  Vankin's use of the Marks creates a likelihood of confusion as to source, affiliation, or sponsorship.**

The second element requires a showing that Vankin's use of the Marks creates a likelihood of confusion as to source, affiliation, or sponsorship. The Fifth Circuit analyzes the likelihood of confusion using "a non-exhaustive list of so-called 'digits of confusion,' which include:

>   the type of mark allegedly infringed, (2) the similarity between the two marks, (3) the similarity of the products or services, (4) the identity of the retail outlets and purchasers, (5) the identity of the advertising media used, (6) the defendant's intent, (7) any evidence of actual confusion, and (8) the degree of care exercised by potential purchasers.

*Streamline Prod.*, 851 F.3d at 453 (internal citation and quotation marks omitted). "No single factor is dispositive, and a finding of a likelihood of confusion need not be supported by a majority of the factors." *Id.*

Here, Vankin has admitted the well-pleaded allegations of the Complaint, including that its unauthorized use of the Marks is likely to cause consumer confusion. (Docket No. 1 at ¶¶ 37-38, 52, 59, 62, 74). But even setting aside Vankin's admission of confusion, a weighing of the "digits of confusion" overwhelmingly supports a finding of a likelihood of confusion.

The "type of mark" factor "refers to the strength of the mark"—the "more distinctive the mark, the more likely that consumers will be confused by competing uses of the mark." *Streamline Prod.*, 851 F.3d at 453–54 (citing *Bd. of Supervisors for La. State Univ. Ag. and Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 479 (5th Cir. 2008)). As set forth above, each of the Marks is distinctive. The similarity between the relevant marks also weighs heavily in favor of Whirlpool, as the marks are identical. Vankin is using the Marks to advertise the accused products. (Docket No. 1 at ¶ 38). The relevant products are also the same, which weighs heavily in favor of a finding

of a likelihood of confusion. *See Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 229 (5th Cir. 2009) (quoting *Exxon Corp. v. Texas Motor Exchange of Houston, Inc.*, 628 F.2d 500, 505 (5th Cir. 1980)) ("'The greater the similarity between the products and services, the greater the likelihood of confusion.'"). The remaining digits of confusion support a finding of a likelihood of confusion as well, including Vankin's intent to deceive. For example, in the following advertisement on www.filterswell.com, one of the accused filters is advertised as a "Whirlpool Filter 1 & EDR1RXD1" when, in fact, it is not:



(Docket No. 1 at ¶¶ 39-40). An identical advertisement has appeared on the www.bluaquafilters.com website. (Exhibit 2, Declaration of Ryan Stefani ¶¶ 2-3).

This intent to deceive, alone, is enough to justify a finding of likelihood of confusion. *See Smack Apparel*, 550 F.3d at 481 ("'Although not necessary to a finding of likelihood of confusion, a defendant's intent to confuse may alone be sufficient to justify an inference that there is a likelihood of confusion.'").

The digits of confusion overwhelmingly demonstrate a likelihood of confusion. Whirlpool is entitled to a default judgment on Counts I, II, and IV.

### 3.    Trademark dilution claim.

Count III of the Complaint is for trademark dilution. "'To state a dilution claim under the

Lanham Act,[3] the plaintiff must show that (1) it owns a famous and distinctive mark; (2) the defendant has commenced using a mark in commerce that is diluting the plaintiff's mark; (3) the similarity between the plaintiff's mark and the defendant's mark gives rise to an association between the marks; and (4) the association is likely to impair the distinctiveness of the plaintiff's mark or harm the reputation of the plaintiff's mark.'" *StoneCoat of Texas, LLC v. ProCal Stone Design, LLC*, No. 4:17CV303, 2019 WL 5395569, at *55 (E.D. Tex. July 25, 2019) (quoting *Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527, (5th Cir. 2015)).

Here, by admitting the well-pleaded allegations of the Complaint, Vankin has admitted that Whirlpool owns the Marks, and that the Marks are famous and distinctive. (Docket No. 1 at ¶¶ 67-68). Vankin has further admitted that it began using the Marks in commerce after the Marks were famous. (*Id.*, at ¶ 68). Vankin has also admitted that its unauthorized use of the Marks has caused and will cause dilution of the distinctive quality of the Marks and the goodwill associated with them. (*Id.* at ¶ 69). Finally, Vankin has admitted that it willfully intended to trade on the reputation and goodwill associated with the Mark or to dilute the Marks, and that Vankin's dilution of the Marks has caused Whirlpool to suffer irreparable injury to its business, reputation, and goodwill into the future. (*Id.*, at ¶¶ 70-71). Default judgment is appropriate on Whirlpool's claim of trademark dilution in Count III.

Whirlpool is entitled to a default judgment on each of the Counts in the Complaint (Counts I–X) against Vankin.

## II.    WHIRLPOOL IS ENTITLED TO A PERMANENT INJUNCTION.

---

[3] The Lanham Act, as amended by the Trademark Dilution Revision Act, provides "the owner of a famous mark that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury." *StoneCoat*, 2019 WL 5395569, at *55 (quotation omitted).

As a remedy for Vankin's ongoing infringement, Whirlpool requests the entry of a permanent injunction. A party seeking a permanent injunction must show that the following four factors (generally referred to as the eBay factors) are satisfied: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Here, each of these factors weighs in favor of granting permanent injunctions against Vankin.

### A. Whirlpool has suffered and will continue to suffer irreparable harm in the absence of a permanent injunction and any remedies available at law are inadequate to compensate Whirlpool for its injuries.[4]

If Vankin is allowed to continue its violations of Whirlpool's trademark and patent rights, Whirlpool will suffer irreparable harm. Indeed, in the context of claims under the Lanham Act, it is the likelihood of confusion itself—and the "inherent injury to the good will and reputation" of the mark holder that results—that renders an injury irreparable. *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc.*, 43 F.3d 922, 939 (4th Cir. 1995). That is because the "loss of control over one's reputation is neither calculable nor precisely compensable." *CFE Racing Products, Inc. v. BMF Wheels, Inc.*, 793 F.3d 571, 596 (6th Cir. 2015) (internal quotation omitted). Further, such harm will occur in the form of continued loss of market share, changed consumer expectations created by the presence of inexpensive, infringing copycat products, and the loss of the its exclusive rights that the patent laws are intended to protect. Harm will also occur via the immeasurable damage to Whirlpool's goodwill and reputation for providing premium products.

---

[4] The first two eBay factors—irreparable harm and lack of an adequate remedy at law—are "closely related" and are discussed together. *ActiveVideo Networks, Inc. v. Verizon Comm'cns, Inc.*, 694 F.3d 1312, 1337 (Fed. Cir. 2012).

And perhaps most importantly, as demonstrated by Vankin's ongoing conduct, injunctive relief is the only way to stop Vankin's ongoing infringing activities.

### 1.    Whirlpool has suffered and will continue to suffer irreparable harm.

With respect to Whirlpool's trademark rights, actionable likelihood of confusion results every time a consumer is exposed to Vankin's false and misleading advertisements and product listings. The harm to Whirlpool's good will and reputation is inherent. *See CFE Racing*, 793 F.3d at 596; *Lone Star*, 43 F.3d at 939. The remedial purpose of an injunction, then, is "to restore the plaintiff the rightful control over its mark and eliminate the likelihood of confusion." *CFE Racing*, 793 F.3d at 596 (internal quotation omitted).[5] Without injunctive relief, Vankin's violations of Whirlpool's trademark rights will continue unabated.

Further, with respect to both Whirlpool's trademark and patent rights, every time a consumer purchases an accused product from Vankin, a potential sale by Whirlpool is lost. Loss of market share justifies a finding of irreparable harm. *See Golden Hour Data Systems, Inc. v. emsCharts, Inc.*, No. 2:06-CV-381-JRG, 2014 WL 8708239, at * 9 (E.D. Tex. March 31, 2014) (citing *Celsis In Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2012).[6] Without an injunction, Vankin's continued infringement will contribute to Whirlpool's ongoing loss of sales and market share will extend into the future.

---

[5] *See also* 5 McCarthy on Trademarks and Unfair Competition § 30:1 (5th ed.) (a permanent injunction is the "usual and normal remedy once trademark infringement has been found in a final judgement"); *SunAmerica Corp. v. Sun Life Assur. Co. of Canada*, 77 F.3d 1325, 1328 (11th Cir. 1996) (permanent injunction against an infringing party is the "order of the day" in Lanham Act cases).

[6] In order to show irreparable harm in the form of lost sales/market share, a patent holder must demonstrate a "causal nexus" between the lost sales/market share and the patented feature(s) at issue. *Apple Inc. v. Samsung Electronics Co., Ltd.*, 695 F.3d 1370, 1374 (Fed. Cir. 2012). Such a "causal nexus" exists in the present case, as Vankin's infringing filters are copycat products that are virtually identical to Whirlpool's Filters 1, 2, and 3.

In addition to—and contributing to—the loss to Whirlpool's market share, Vankin's infringement is contributing to the creation of a marketplace where consumers expect a lower price point on replacement filters that are compatible with their Whirlpool products. Vankin's infringing filters are routinely offered for sale for roughly half the retail price—or less—of Whirlpool's Filters 1, 2, and 3. If Vankin's infringement is permitted to continue, Whirlpool would be forced to decide between a continued loss to its market share or a reduction in the retail price for its own products in order to compete against the infringing filters being sold by Vankin. *See Celsis*, 664 F.3d at 930 (price erosion valid ground for finding irreparable harm). This is particularly the case, as Vankin is a direct competitor of Whirlpool. *See Trebro Mfg. Inc. v. Firefly Equip., LLC*, 748 F.3d 1159, 1171 (Fed. Cir. 2014) (evidence of direct competition "strongly shows a probability of irreparable harm")

Furthermore, the irreparable harm to Whirlpool will be compounded to the extent that Vankin's infringing filters cause customer dissatisfaction. Whirlpool ensures that its water filters are of high quality by devoting substantial resources to quality control testing and third-party certification. (Exhibit 1, Declaration of Timothy C. Schifer ¶ 9). Whirlpool has no control over the quality of Vankin's infringing filters, or their compatibility or lack thereof with Whirlpool's refrigerators. "Harm to reputation resulting from confusion between an inferior accused product and a patentee's superior product is a type of harm that is often not fully compensable by money because the damages caused are speculative and difficult to measure." *Reebok International Ltd. v. J. Baker, Inc.*, 32 F.3d 1552, 1554 (Fed. Cir. 1994).

### 2. Remedies at law are inadequate and Whirlpool's requested injunctive relief is the only way to stop Vankin's ongoing infringing activities.

As set forth herein, Vankin has chosen to simply ignore this litigation and continues with its infringing conduct unabated. It is unlikely that Whirlpool could collect a damages award

because Vankin is a foreign defendant with no known domestic assets. *See Bianco v. Global Medical, Inc.*, No. 2:12–CV–00147–WCB, 2014 WL 1049067, at *13 n.4 (E.D. Tex. Mar. 17, 2014) (citing *Acticon Technologies v. Heisei Electronics Co.*, No. 06–CV–4316 (KMK), 2008 WL 356872 (S.D.N.Y. Feb. 5, 2008) (noting that because a defendant defaulted, damages were difficult to ascertain and there was serious doubt as to whether the plaintiff could collect a damages award). Injunctive relief is, thus, the only way to stop Vankin's ongoing infringing activities. Accordingly, as set forth in Paragraphs 3-4 of the Proposed Order, Whirlpool respectfully request this Court enjoin Vankin, and any persons in active concert or participation therewith, from the sale, offer for sale, importation, distribution, and shipment of the accused products in the United States.

### a.    Online advertising.

Whirlpool also requests that this Court enjoin Vankin, and any persons in active concert or participation therewith, from the use of advertising links on third-party websites, social media,[7] and search engines, such as Google and Bing, directing consumers to the accused products on the websites operated by Vankin. Without the use of such infringing advertisements, Vankin's ability to continue to harm Whirlpool will be greatly curtailed. Given Vankin's complete disregard for this litigation and the laws of the United States, and its ongoing sales of the accused products to this day, this requested relief will provide Whirlpool with a meaningful way in which to enforce an Order from this Court enjoining Vankin from continuing with its infringing activities. The Court has awarded this form of relief in similar cases. *See, e.g., Whirlpool Properties, Inc. v. Asscon International Co. Limited LLC*, No. 2:20-CV-00042-JRG (E.D. Tex. Apr. 27, 2020) (Docket No. 98); *Whirlpool Corp. v. YiHangGou Trading Co., Ltd.*, No. 2:20-cv-00341 (E.D. Tex. Dec. 22,

---

[7] Vankin also utilizes various social media platforms, such as Facebook, to direct consumers to the accused products on websites operated by Vankin. (Exhibit 2, Declaration of Ryan Stefani ¶ 4).

2021) (Docket No. 41); *Whirlpool Corp. v. Individuals, Partnerships, and Unincorporated Associations that Own or Operate www.dfilters.com*, No. 2:21-cv-00398-JRG (E.D. Tex. June 2, 2022) (Docket No. 18). Accordingly, Whirlpool respectfully requests that this Court enter an Order as set forth in Paragraphs 5-6 of the Proposed Order.

### b.    Vankin's existing inventory.

Whirlpool also requests that this Court order that Vankin, and any persons in active concert of participation therewith, turn over any existing inventory of the accused products to Whirlpool for destruction, or in the alternative, retain all inventory of the accused products held in the United States. In light of the challenges of enforcing an order against Vankin, Whirlpool submits that such relief is both appropriate and necessary to prevent Vankin's continued infringement. The Court has entered injunctions with similar relief in the past. *See, e.g., Whirlpool Properties, Inc. v. Asscon International Co. Limited LLC*, No. 2:20-CV-00042-JRG (E.D. Tex. Apr. 27, 2020) (Docket No. 98); *Whirlpool Corp. v. YiHangGou Trading Co., Ltd.*, No. 2:20-cv-00341 (E.D. Tex. Dec. 22, 2021) (Docket No. 41); *Whirlpool Corp. v. Individuals, Partnerships, and Unincorporated Associations that Own or Operate www.dfilters.com*, No. 2:21-cv-00398-JRG (E.D. Tex. June 2, 2022) (Docket No. 18). Other courts have granted similar relief as well. *See, e.g., Bird-B-Gone Inc. v. Haierc Indus. Co.*, No. 2:18-cv-00819, 2018 WL 5816630, *3-4 (D. Nev. Nov. 6, 2018) (entering permanent injunction restraining defendant and persons acting in concert from, inter alia, selling, distributing, assisting other entities with the sale or distribution, or processing orders of the infringing products) Accordingly, Whirlpool respectfully requests that this Court enter an Order as set forth in Paragraph 7 of the Proposed Order.

### c.    The Court should use its authority to order third-parties to disable Vankin's domain names.

Whirlpool also requests that the Court enter an order directing that the domain name

registries, internet service providers, hosts, and/or individual registrars holding or listing the www.filterswell.com or www.bluaquafilters.com websites, including but not limited to GoDaddy.com LLC and Verisign, Inc. shall, within seven days of notice of an injunction from this Court, temporarily disable these domain names through a registry hold or otherwise, and make them inactive and non-transferable pending further order from this Court. This form of relief is consistent with the Federal Rules of Civil Procedure and has been granted by courts in similar cases. *See, e.g., Amazon.com, Inc. v. Masseags*, No. 2:21-cv-1456, 2022 WL 18356246, at *3 (W.D. Wash. Dec. 19, 2022); *Paramount Pictures Corp. v. Primewire*, No. 2:21-cv-09317, 2022 WL 423408, at *4 (C.D. Cal. Jan. 7, 2022); *Viahart, LLC v. Chickadee Business Sols., LLC*, No. 6:19-CV-406, 2021 WL 6333033, at *19 (E.D. Tex. July 2, 2021).

Federal Rule of Civil Procedure 65(d)(2) provides that an injunction binds the following who receive actual notice of an injunction: (A) the parties; (B) the parties' officers, agents, servants, employees, and attorneys; and (C) other persons who are in active concert or participation with anyone described in Rule 65(d)(2)(A) or (B). Fed. R. Civ. P. 65(d)(2) (emphasis added). "The Supreme Court has interpreted this language to allow injunctions to bind not only defendants but also people 'identified with them in interest, in 'privity' with them, represented by them or subject to their control.'" *Calif. Chamber of Com. v. Council for Educ. & Rsch. on Toxics*, 29 F.4th 468, 483 (9th Cir. 2022) (quoting *Golden State Bottling Co. v. NLRB*, 414 U.S. 168, 179 (1973)). "Nonparties may be found in contempt of an injunction provided they have actual notice of the injunction and aid or abet in its violation." *McGraw-Edison Co. v. Preformed Line Prod. Co.*, 362 F.2d 339, 344 (9th Cir. 1966).

Against this legal backdrop, federal courts have ordered third-parties, including domain registrars and registries, to disable domains that are used in furtherance of infringing activities.

*See, e.g., Masseags*, 2022 WL 18356246, at *3 (ordering domain name registries, internet service providers, hosts, and/or individual registrars holding or listing websites used in conjunction with offending domain to disable domain names through registry hold or otherwise); *Paramount Pictures Corp.*, 2022 WL 423408, at *4 (ordering defendants' domain name registrars and registries to "freeze and disable the PrimeWire Websites and/or the corresponding domain names, associated with the PrimeWire Websites"); *Cisco Sys., Inc. v. Wuhan Wolon Comm. Tech. Co., Ltd.*, No. 5:21-cv-04272, at *15 (N.D. Cal. July 23, 2021) (ordering any registrar for any domain names owned or operated by any restrained party to disable offending domains and provide certificate of compliance with the same within three business days of receipt of order); *Hassell Free Plumbing, LLC v. Wheeler*, No. 3:20-CV-1712-K, 2021 WL 1139424, at *7 (N.D. Tex. Mar. 25, 2021) (Entering default judgment and permanent injunction in trademark case, and ordering that "Plaintiff is entitled to receive ownership of the [defendant's] Website; or, in the alternative, the registrar for the Website shall delist the Website and remove its registration so that it may no longer be accessed by the general public."); *Viahart, LLC*, 2021 WL 6333033, at *19 ("Upon a notice of the permanent injunction, Defendants' website registrars and website shopping administrators, including but not limited to Shopify, shall immediately take down or remove from the relevant websites all pages, including shopping-cart pages, that depict, advertise, or make available for sale or distribution, any of Defendants' goods bearing one or more of Plaintiff's BRAIN FLAKES or VIAHART trademarks or copyrights."), *report and recommendation adopted*, No. 6:19-CV-00406, 2022 WL 1262125 (E.D. Tex. Apr. 27, 2022); *Averitt Express, Inc. v. Averitt*, No. 4:20-cv-01362-P, 2021 WL 5277479, at *2 (N.D. Tex. Mar. 15, 2021) (entering default judgment in Lanham Act case and ordering that plaintiff "may provide this Order to the appropriate domain registrar with instructions to surrender, cancel, or transfer, the domain name

registration for any domain names and websites bearing [the plaintiff's] Mark"); *Amazon Content Servs. LLC v. Kiss Library*, No. 2:20-cv-01048, 2020 WL 12863507, at *4 (W.D. Wash. Aug. 27, 2020) (ordering domain name registries, service providers, or resellers, and/or individual registrars to temporarily disable domain names of infringing websites); *Mode Media Corp. v. Doe 1*, No. 3:16-cv-00244, 2016 WL 9185290, at *2 (N.D. Cal. Jan. 15, 2016) (ordering offending domain name be placed on lock and hold throughout pendency of litigation).

This form of relief is necessary to ensure Vankin's ongoing infringing activities are actually put to a stop. Accordingly, Whirlpool respectfully requests that the Court enter an Order as set forth in Paragraph 8 of the Proposed Order.

### d. The Court should prohibit Vankin from working with payment processors to provide services to Vankin in connection with the continued operation of the websites.

Finally, Whirlpool requests that the Court prohibit Vankin from working with payment processors who are in active concert or participation with Vankin to provide services in connection with the continued operation of the www.filterswell.com or www.bluaquafilters.com websites. Courts have awarded similar relief against foreign defendants in similar cases. *See, e.g., Mattel, Inc. v. www.fisher-price.online*, No. 21-cv-9608, 2022 WL 2801022, at *13-14 (S.D.N.Y. July 18, 2022) (permanently enjoining all banks, financial institutions, credit card companies, and payment processing agencies, such as PayPal and any other companies that engage in the processing or transfer of money, who are acting in concert with or under the direction of defendant, from "providing services to Defendant in connection with the continued operation of Defendant's Website"); *see also Zuru Inc. v. Individuals, Partnerships, and Unincorporated Associations Identified on Schedule "A,"* No. 1:23-cv-01852, 2023 WL 2435325, at *4 (S.D.N.Y. Mar. 9, 2023) (entering temporary restraining order that requires defendants and all financial institutions and

payment processors to restrain all transfers of defendants' funds). Like the other forms of requested relief, this is necessary to ensure Vankin's ongoing infringing activities are actually put to a stop. Accordingly, Whirlpool respectfully requests that the Court enter an Order as set forth in Paragraph (5)(d) of the Proposed Order.

**B.    The balance of the equities weighs heavily in favor of an injunction.**

The "balance of the equities" assesses the relative effect of granting or denying an injunction on the parties." *i4i Ltd. Partnership v. Microsoft Corp.*, 598 F.3d 831, 862 (Fed. Cir. 2010). This factor overwhelmingly favors Whirlpool.

As discussed above, Whirlpool will suffer significant and irreparable harm absent an injunction. Furthermore, if Vankin is allowed to continue to engage in its infringing activity and cannot be halted by an injunction, it will encourage other actors to begin or to continue to engage in the sale of infringing water filters, thereby inflicting further harm upon Whirlpool. Permitting Vankin—a defaulting defendant—to continue its infringing sales would be particularly unfortunate as it would better position it, a defaulting party who has ignored legal process, in comparison with the dozens of other defendants now subject to permanent injunctions from this Court for selling infringing filters.

Vankin has blatantly copied Whirlpool's patented inventions and designs, and is selling infringing filters by luring consumers through its deceptive and misleading use Whirlpool's Marks. Any harm to Vankin in the form of costs or expenses incurred in creating the infringing filters, or in lost opportunity to sell the infringing filters in the United States by violating Whirlpool's trademark rights, is irrelevant. *See i4i Ltd.*, 598 F.3d at 863. The balance of the equities strongly favors an injunction.

**C.  Enjoining Vankin's continued infringement promotes the public interest.**

The public interest "is best served by enforcing patents that are likely valid and infringed."

*Apple, Inc. v. Samsung Electronics Co., Ltd.*, 678 F.3d 1314, 1338 (Fed. Cir. 2012). Denial of an injunction in circumstances like the present—literal infringement by a copycat seller that knows it is infringing, and blatant infringement of Whirlpool's trademark rights—would encourage other copycat infringers to enter the market and misappropriate Whirlpool's intellectual property. An injunction here will serve the important function of encouraging third parties to respect patent and trademark rights and to compete based on their own innovations, rather than copying someone else's inventions. No countervailing public interest weighs against the issuance of an injunction in this case.

## III.    WHIRLPOOL IS ENTITLED TO AN AWARD OF ATTORNEY FEES UNDER 35 U.S.C. § 285 AND 15 U.S.C. § 1117.

Pursuant to 35 U.S.C. § 285 and 15 U.S.C. § 1117, the Court "in exceptional cases may award reasonable attorney fees to the prevailing party." An "'exceptional case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated.'" *WPEM, LLC v. SOTI Inc.*, No. 2:18-cv-00156-JRG, 2020 WL 555545, at *3 (E.D. Tex. Feb. 4, 2020) (quoting *Octane Fitness, LLC v. Icon Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014)).

Here, Vankin has admitted its infringement of the Patents was willful. (Docket No. 1 at ¶¶ 90, 102-03, 115-16, 128-29, 141-42, 154-55). Attorney fees are routinely awarded when willful infringement has been proven. *See Pact XPP Technologies, AG v. Xilinx, Inc.*, Case No. 2:07-CV-563-RSP, 2013 WL 4735047, *1 (E.D. Tex. Sept. 3, 2013). Courts have held that in the context of default, "a pleading that infringement was willful is sufficient to establish entitlement to attorneys' fees." *Ceiva Logic Inc. v. Frame Media Inc.*, No. SACV 08-00636-JVS, 2014 WL 7338840, at *4 (C.D. Cal. Dec. 19, 2014). What is more, Vankin's disregard for Whirlpool's intellectual property

rights (both before and after the filing of the Complaint), as well as its disregard for the legal process itself, further supports a finding that this is an exceptional case. Whirlpool therefore requests leave to submit an application for reasonable attorney fees.

## IV.    WHIRLPOOL IS ENTITLED TO ITS COSTS UNDER RULE 54(D)(1).

Under Federal Rule of Civil Procedure 54(d)(1), "costs–other than attorney's fees–should be allowed to the prevailing party." Again, the entry of default judgments and permanent injunctions alter the legal relationship between the parties and are sufficient to make Whirlpool a "prevailing party" for purposes of awarding costs. *See Power-One, Inc. v. Artesyn Technologies, Inc.*, Civil Action No. 2:05cv463, 2008 WL 4065871, *3-*4 (E.D. Tex. Aug. 27, 2008). Whirlpool therefore requests that the clerk tax costs after entry of final judgment and the submission of a bill of costs.

### CONCLUSION

For the foregoing reasons, Whirlpool respectfully requests that the Court grant this motion and enter a default judgment against Vankin, issue a permanent injunction against Vankin pursuant to Federal Rule of Civil Procedure 65, 35 U.S.C. § 283, 35 U.S.C. § 271, and 15 U.S.C. § 1116, award Whirlpool its reasonable attorney fees pursuant to 35 U.S.C. § 285 and 15 U.S.C. § 1117, and award Whirlpool its costs pursuant to Federal Rule of Civil Procedure 54(d)(1).

Specifically, the Court should enter a permanent injunction in which:

1.    Vankin and its subsidiaries, successors, assigns, officers, directors, agents, servants, employees, attorneys, and persons in active concert or participation with them (including any affiliated entities) are permanently enjoined from infringing, directly or indirectly, claims 1 and 4 of U.S. Patent No. 7,000,894, claim 1 of U.S. Patent No. 8,356,716, claim 1 of U.S. Patent No. 8,591,736, claim 1 of U.S. Patent No. 8,845,896, claim 1 of U.S. Patent No. 9,937,451, and claim 1 of U.S. Patent No. 10,101,820, by offering to sell, selling, importing into the United States,

distributing, shipping, or otherwise disposing of the Accused Products or any replacement water filters that are not more than colorably different therefrom.

2.    Vankin and its subsidiaries, successors, assigns, officers, directors, agents, servants, employees, attorneys, and persons in active concert or participation with it (including any affiliated entities) are permanently enjoined from:

a.    In any online product listings or commercial advertisements for non-Whirlpool refrigerator water filters, using any of the Whirlpool Marks or model numbers of genuine Whirlpool filters at the beginning of product titles or product descriptions to name, identify, or otherwise describe such non-Whirlpool refrigerator water filters, including but not limited to such online product listings or commercial advertisements on websites operated by Defendant, including www.filterswell.com and www.bluaquafilters.com, as well as third-party websites such as www.bonanza.com;

b.    In any online product listings or commercial advertisements, including advertising linked to www.filterswell.com, www.bluaquafilters.com, www.bonanza.com, or other websites, using any of the Whirlpool Marks to falsely or misleadingly identify or suggest the source of any non-Whirlpool refrigerator water filters, or describe Whirlpool as affiliated with, or sponsoring or approving any non-Whirlpool refrigerator water filters; and

c.    Submitting product descriptions, commercial advertisements, or web links to product listings for any non-Whirlpool refrigerator water filters to any third-party which: (a) reference one or more of the following patented Whirlpool water filter models: "EveryDrop Filter 1", "EDR1RXD1", "EDR1RXD2", "EDR1RXD3", "EDR1RXD4", "EDR1RXD5", "EDR1RXD6", "W10295370", "W10295370A", "EveryDrop Filter 2", "EDR2RXD1", "EDR2RXD2", "EDR2RXD3", "EDR2RXD4", "EDR2RXD5", "EDR2RXD6",  "W10413645A", "W10413645", "EveryDrop Filter 3", "EDR3RXD1", "EDR3RXD2", "EDR3RXD3", "EDR3RXD4", "EDR3RXD5", "EDR3RXD6", "4396841", or "4396710", to name, identify, or describe such non- Whirlpool refrigerator water filters; or (b) direct online consumers to product listings for non-Whirlpool refrigerator water filters that reference one or more of the following patented Whirlpool water filter models: "EveryDrop Filter 1", "EDR1RXD1", "EDR1RXD2", "EDR1RXD3", "EDR1RXD4", "EDR1RXD5", "EDR1RXD6", "W10295370", "W10295370A", "EveryDrop Filter 2", "EDR2RXD1", "EDR2RXD2", "EDR2RXD3", "EDR2RXD4", "EDR2RXD5", "EDR2RXD6", "W10413645A", "W10413645", "EveryDrop Filter 3", "EDR3RXD1", "EDR3RXD2", "EDR3RXD3", "EDR3RXD4", "EDR3RXD5", "EDR3RXD6", "4396841", "4396710," "Whirlpool ICE2", "EveryDrop ICE2", or "F2WC9I1."

       d.   Working with Visa, Mastercard, Discover, American Express, PayPal, Venmo, and all other similar payment processing companies who are acting in concert with or under the direction of Defendant and/or its subsidiaries, successors, assigns, officers, directors, agents, servants, employees, attorneys, and persons in active concert or participation with them (including any affiliated entities), to provide services in connection with the continued operation of the www.filterswell.com or www.bluaquafilters.com websites. The prohibition in this subparagraph (d) shall terminate in the event Defendant stops infringing the Patents through the offer for sale, sale, distribution, or importation into the United States Bluaqua filters that purport to be compatible with or replacements for Whirlpool "Filter 1," "Filter 2," or "Filter 3" model filters or any replacement water filters that are not more than colorably different therefrom.

     3.     Vankin and its subsidiaries, successors, assigns, officers, directors, agents, servants, employees, attorneys, and persons in active concert or participation with them (including any affiliated entities) shall immediately and permanently discontinue all advertising links on websites, social media, or search engines that direct to any webpage operated by Vankin (including all webpages with a www.filterswell.com or www.bluaquafilters.com domain name) that reference (a) one or more of Bluaqua filter models that purport to be compatible with the Whirlpool Filter 1, Filter 2, or Filter 3; and/or (b) one or more of the following model numbers associated with Whirlpool's patented water filter models: "EveryDrop Filter 1", "EDR1RXD1", "EDR1RXD2", "EDR1RXD3", "EDR1RXD4", "EDR1RXD5", "EDR1RXD6", "W10295370", "W10295370A", "EveryDrop Filter 2", "EDR2RXD1", "EDR2RXD2", "EDR2RXD3", "EDR2RXD4", "EDR2RXD5", "EDR2RXD6", "W10413645A", "W10413645", "EveryDrop Filter 3", "EDR3RXD1", "EDR3RXD2", "EDR3RXD3", "EDR3RXD4", "EDR3RXD5", "EDR3RXD6", "4396841", "4396710", "Whirlpool ICE2", "EveryDrop ICE2", or "F2WC9I1".

     4.     Vankin and its subsidiaries, successors, assigns, officers, directors, agents, servants, employees, attorneys, and persons in active concert or participation with them who receive actual notice of this order by personal service or otherwise are ordered to (1) turn over any existing inventory of Bluaqua-branded filters that purport to be compatible with the Whirlpool Filter 1,

Filter 2, or Filter 3 model filters, to Whirlpool for destruction within 30 days, or (2) if a party objects to turning over its inventory to Whirlpool, then that party must, within 30 days of receiving notice of this order, provide a certification to Whirlpool that it is not acting on behalf of, as an independent contractor for, or otherwise in active concert or participation with Vankin or any of its subsidiaries, successors, assigns, officers, directors, agents, servants, employees, or attorneys in acquiring or distributing inventory of Bluaqua-branded filters that purport to be compatible with the Whirlpool Filter 1, Filter 2, or Filter 3 model filters, or any colorable variations thereof. Whirlpool shall hold all inventory obtained hereunder and not destroy it until the final resolution of this case, including expiration of time to appeal.

5.      The domain name registries, internet service providers, hosts, and/or the individual registrars holding or listing the www.filterswell.com or www.bluaquafilters.com website domains, including but not limited to GoDaddy.com, LLC and Verisign, Inc. shall, within seven (7) days of notice of this Order, temporarily disable these domain names, or any subset of these domain names specified by Whirlpool, through a registry hold or otherwise, and make them inactive and non-transferable pending further order from this Court, unless Whirlpool requests that particular domain names be released from such restraints.

Dated:  August 30, 2023                  Respectfully submitted,


                                         By: */s/ Melissa R. Smith*
                                         Melissa R. Smith (*TX State Bar No. 24001351*)
                                         GILLAM & SMITH, LLP
                                         303 S. Washington Ave. Marshall, TX 75670
                                         Telephone: (903) 934-8450
                                         Facsimile: (903) 934-9257
                                         Email:  Melissa@gillamsmithlaw.com

Jeffrey D. Harty (IA AT0003357)
 (Admitted Eastern District of Texas)
Ryan Stefani (IA AT00012387)
(Admitted in the Eastern District of Texas)
NYEMASTER GOODE, P.C.
700 Walnut Street, Ste. 1600
Des Moines, IA 50309-3899
Telephone: (515) 283-3100
Facsimile: (515) 283-3108
Email:  jharty@nyemaster.com
Email  rstefani@nyemaster.com

*Attorneys for Plaintiffs*
**WHIRLPOOL PROPERTIES, INC.,
WHIRLPOOL CORPORATION, AND
MAYTAG PROPERTIES, LLC**